The material parts of the evidence were that the plaintiff purchased from the defendant a horse for the price of forty pounds, after he had sent an agent to examine whether the color and size would serve to match a horse he had; the bargain was completed, upon the agent's reporting to the plaintiff favorably of the horse's appearance.
He did, however, examine and approve the horse himself. At each examination the horse, being taken out of the plough, had on a blind bridle. The witnesses generally thought that forty pounds were the *Page 107 
full value of the horse, had he been sound; though one witness for the defendant deemed him worth fifty or sixty.
It did not appear distinctly from the evidence whether forty pounds was the separate price of the horse, or whether they were paid on account of the horse and a negro, jointly sold for two hundred pounds.
Very soon after the delivery, the plaintiff discovered that the horse was totally blind in one eye and that the sight of the other was considerably impaired; being about to leave the country himself, he directed his agent to return the horse and demand the money, which was accordingly attempted, but the defendant refused to receive the horse unless the negro was likewise returned. About five months before the sale, a film had been cut off the horse's eye, since which it was testified that the animal appeared altogether free from any defect in that organ.
In point of real justice, there is no difference whether a man receives the money of another on a consideration which happens to fail, or upon the sale of property which proves to be of less value, by means of a defect, than it was sold for; the principle which enables him to recover in the one case applies with equal strength to the other.
The Court, in its charges to the jury, said that the last count upon a deceit was incompatible with the two former, which are founded (113) upon promises, and consequently require a different plea. That the ancient way of declaring, in this action, was in deceit, which had been changed for the convenience of adding to the declaration a general count for money had and received. As this was not done in the present case and as the latter count could not consist with the others, it was only necessary to state the points, upon which the jury ought to be satisfied, in order to find a verdict for the plaintiff.
That no part of the evidence applied to the first count of the express warranty; and the second could only be established by proof that the price paid for the horse was a full one, and that he was unsound at the time of sale, except the defect was visible and apparent, so that the plaintiff must have known it.
If these facts are made out to the satisfaction of the jury, the plaintiff is entitled to their verdict; nor is it incumbent upon him to prove, in this form of action, that he returned the horse; for if the contract is established, this circumstance will not change it. It might, indeed, have afforded a presumption that he knew the defect, if he had not directed his agent to return the horse; but having done that soon after the sale, it seems likely that he then first discovered it.
A return would be necessary if the action had been brought for the price of the horse. In such case the plaintiff must show that the contract is at an end; but where it still continues open, the object of the suit is damages, the proper measure of which is the difference between the price paid and the horse's real value.
Verdict for the plaintiff.
NOTE. — See Galbraith v. Whyte, 2 N.C. 464; but the rule that a full price implies a warranty has been since exploded. Erwin v. Maxwell,7 N.C. 241.
(114)